No. 37,605

Mrs. Minnie Hultberg, *Appellant*, v. Ruth Phillippi, *Appellee.*

(206 P. 2d 1057)

Opinion filed June 11, 1949.

*Evart Mills,* of McPherson, argued the cause and was on the briefs for the appellant.

*L. H. Ruppenthal,* of McPherson, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This was an action for damages for personal injuries sustained by plaintiff when she was struck by an automobile driven by defendant. The trial court sustained a demurrer to plaintiff's evidence and she has appealed.

The pertinent portions of the record may be summarized as follows: Main street in McPherson is a north-and-south street. It is paved sixty-three feet wide from curb to curb. The four hundred block is in the business section of the city, but there are some vacant lots. It is intersected at the north by Woodside street and at the south by a street on which there are three or more tracks of the Santa Fe Railway Company. Near the south end of the block on the west side of the street is the American Legion hall and about one hundred feet north of it is the Cozy Inn, managed by Mrs. Stowe. Near it is a driveway from the street to the west across the sidewalk. Almost opposite that driveway and on the east side of the street is a similar driveway from the street across the walk. The plaintiff, seventy-six years of age, was spry for her age, although she walked rather slowly; and though she wore glasses her eyesight was very good, as was also her hearing. Apparently she had lived in McPherson for many years. On Saturday evening, May 22, 1948, she went to the home of her friend, Augusta Gustafson, and visited awhile, and together they went to the greenhouse, which was on the east side of Main street, where they separated.

Plaintiff started to walk across Main street at the driveway above mentioned. It was then about 8:45 p. m. A witness, who was driving north on Main street, saw her standing near the curb on the east side of the street as though she were starting to walk across the street. Shortly after that two young men, driving north on the east side of the street, saw what they first thought was a "gunny sack" lying near the center of the street. On looking more closely they saw it was a woman. They parked their car immediately and ran over to her. Plaintiff was lying on the pavement about two to four feet west of the center of the pavement, her head to the south or southeast and her feet to the north or northwest. She was waving her arms in the air and calling for help. Other people gathered about. Mrs. Stowe had come out of the cafe and someone called to her to bring a pillow and a blanket, which she did, and placed plaintiff's head on the pillow and covered her with the blanket. In the meantime defendant had driven south a distance of seventy-five or eighty feet and stopped her car in front of the American Legion behind cars parked there. She went into the Legion building and asked Mr. Wright, the manager, to use the telephone to call an ambulance, stating that she had hit a woman in the street. Defendant was very nervous. Mr. Wright directed her to the telephone and said he would go out in the street and see what he could do. He found plaintiff lying approximately in the middle of the street. There were some folks there taking care of her. The traffic was going on both sides of her. The witness took over the directing of traffic from the south around her on the east side of the street until the police officer came. It seems that in addition to calling an ambulance defendant called the police headquarters. Officer Kennedy was on duty and he went to see where plaintiff was hurt. She was lying on the west side of the center strip of Main street ten or twelve feet from the back end of parked cars on the west side of the street. Her body was lying with her head to the southeast, her feet to the northwest. She had a blanket spread over her and a pillow under her head. She was about one hundred and five feet south of Woodside street. Plaintiff was taken away from the scene of her injury to her home and the next morning was taken to the hospital. The evidence disclosed that she was seriously injured, but the extent of that is not now before us. The witness Kennedy was asked:

"Q. Did you examine the car for any marks that would indicate where any part of the car may have brushed a pedestrian? A. I did.

"Q. Will you state to the jury just what you found? A. A spot of dirt that possibly was rubbed off by a garment or cloth of some kind on the right front fender.

"Q. The fender had been brushed to indicate that the dust might have settled on it had been rubbed off? A. That's right. There was no dent in it, however."

The next morning defendant went to the police station and signed an accident report on a form provided for a report to the motor vehicle department for a two-car accident, but since only one car was here involved defendant's car was spoken of as Car No. 1. The pertinent part of the report reads:

"Car No. 1 going south on Main Street. Mrs. Hultberg started across street from between two parked cars. Car No. 1 did not see Mrs. Hultberg, striking her with right front fender knocking her to pavement extent of injuries not known."

This was signed by the defendant. Officer Paul Smith, to whom the report was made, was asked and answered the following questions:

"Q. That's the way that she told you? A. I wrote it as near word for word as she gave it.

"Q. That she never saw Mrs. Hultberg until the time she struck her? A. That's right."

The demurrer to the evidence was "for the reason that the same does not show a cause of action against the defendant." The demurrer was argued to the court and sustained. A motion for a new trial was promptly filed, overruled, and a notice of appeal served and filed the same day.

Counsel for appellant contend the trial court erred in sustaining the demurrer to the evidence. The point is well taken. (See *Gabel v. Hanby*, 165 Kan. 116, 193 P. 2d 239; *Shoup v. First Nat'l Bank*, 145 Kan. 971, 975, 67 P. 2d 569, and authorities there cited.) Counsel for appellee cite one case (*Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158). We think the case not in point here. There the plaintiff went out between two parked cars across the center line of the street and into the side of a truck and sustained injuries. All the evidence here is that the plaintiff walked from the east side of the street, where there were no parked cars. She was struck near the center of the street, which would tend to show that defendant was on the wrong side of the street as she drove south and struck plaintiff with her right front fender. Defendant's statement in her report to the police that the plaintiff came out into the street between

two parked cars can be nothing more than the conclusion of defendant in view of the fact that she further stated that she never saw the plaintiff, from which it clearly appears that she did not know whether she came from behind parked cars on the west side of the street or from the east side of the street where there were no parked cars.

The judgment of the trial court is reversed with directions to grant a new trial.